IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BILL L. HIGDON**   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| vs.   ) | CIVIL NO.  08-776-JPG-PMF |
| ) | |
| **MICHAEL J. ASTRUE, Commissioner**   ) | |
| of Social Security,   ) | |
| ) | |
| Defendant.   ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Plaintiff, Bill L. Higdon, seeks judicial review of a final decision of the Commissioner of Social Security denying his February, 2007, applications for disability benefits and supplemental security income. Higdon's applications were rejected following an administrative determination that he was not disabled. The administrative decision became final when the Appeals Council declined to review the decision reached by an Administrative Law Judge (ALJ). Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520; 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

At the time of the ALJ's decision, Higdon was 48 years old. He had a high school education and work experience as a barge worker, gas station maintenance worker, food department store manager, and fork lift operator.

The ALJ evaluated Higdon's applications through the last step of the sequential analysis and concluded that he had a number of physical ailments: obesity, status-post discectomy at L5-S1, status-post anterior cruciate ligament tear of the right knee, mild degenerative joint disease of the left knee, mild chronic obstructive pulmonary disease, and hypertension controlled by medication. These ailments did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ also determined that Higdon retained the ability to work except for jobs requiring him to lift or carry objects weighing more than 10 pounds frequently or more than 20 pounds occasionally; climb ropes, ladders or scaffolds or more than occasionally climb ramps or stairs or balance, stoop, kneel, crouch or crawl. He was also unable to work where he would be exposed to concentrated or

excessive dust, fumes, chemicals, extreme temperatures, high humidity, dampness, or other allergens, pollutants, and atmospheric irritants. While these limitations prevented Higdon from performing all of his past jobs, the ALJ found that he was not disabled because he could still perform a number of other jobs, such as band salvager, core extruder, steak tenderizer, injection molding machine operator, and racker. The ALJ further explained that if Higdon were not capable of light work but is instead limited to sedentary work, the applicable vocational rules would also direct a finding of "not disabled." (R. 23-31).

Higdon challenges the Commissioner's decision on several grounds, discussed below. Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, the decision will be reversed unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

In their briefs, the parties have adequately summarized the medical evidence and other portions of the administrative record. To the extent necessary, relevant portions of the record are discussed below.

## I.     ALJ's Assessment of Severity Under SSR 96-3p

Higdon argues that the ALJ failed to properly assess the severity level of two impairments: obesity and chronic back pain.  Defendant responds that the ALJ specifically found that obesity was a severe impairment and did not err by failing to discuss objective medical evidence of chronic back pain which was created after the date of decision.

This argument targets Step 2, when ALJs review medical evidence and determine whether there is a physical or mental impairment (or combination of impairments) that significantly limits the claimant's ability to perform basic work activities.  When a symptom is established by objective medical evidence, it can qualify as a severe impairment.  Social Security Ruling 96-3p.  The burden of proof is on plaintiff at this Step.  20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ resolved Step 2 in Higdon's favor.  In doing so, the ALJ listed multiple physical impairments.  Because obesity was listed, there is no reason to conclude that the ALJ failed to assess the severity of that ailment.

The ALJ did not list back pain as a separate impairment, but did recognize that Higdon had a severe back ailment as a result of his history of back surgery (R. 25, 29).  In support of his argument that the ALJ should have listed back pain as a separate, severe impairment, Higdon directs attention to a report prepared by a physician's assistant on September 17, 2008.  That report notes an "equivocal probably positive" straight leg raising test on the left and an assessment of low back pain with left-sided radiculopathy (R. 9).  The report was generated two months after the ALJ announced his decision (on July 16, 2008).

Evidence that was not presented to an ALJ does not support a finding of reversible error. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  Moreover, when ALJs proceed beyond Step 2,

they consider the combined impact of all impairments, regardless of the level of severity. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923; 416.945(a)(2). Hence, any error in failing to identify chronic back pain as a separate severe impairment at Step 2 does not detract from the reliability of the decision that Higdon was not disabled because he could perform a number of jobs. Also, it is apparent from the ALJ's discussion that symptoms from Higdon's spinal impairment were considered in the course of the analysis (R. 24-29).

## II.     Assessment of Combined Effect of Impairments Under SSR 96-8p

Higdon argues that the ALJ failed to consider evidence that his obesity combined with his other ailments to prevent him from lifting items weighing more than 10 pounds, bending to reach items at floor level, squatting, stooping, or putting any stress on his neck or back. Defendant suggests that the ALJ considered the combined effect of Higdon's impairments and reasonably found that he was limited to a restricted range of light work.

This argument targets the ALJ's assessment of Higdon's residual functional capacity (RFC). RFC is an issue at Steps 4 and 5 of the sequential evaluation and reflects the ALJ's assessment of the most Higdon can do on a regular and continuing basis, despite limitations caused by his medically determinable physical impairments. As noted above, the assessment reflects limitations from non-severe impairments in combination with limitations imposed by severe impairments. When well-supported and not inconsistent with other substantial evidence, ALJs are to give treating source medical opinions controlling weight. SSR 96-8p.

Higdon first suggests that the ALJ failed to consider whether obesity combined with other ailments to limit bending, lifting, squatting, and stooping. Portions of the record reflect medical restrictions against these types of movements (R. 41, 43, 62-63, 154, 171, 213-215, 230, 233, 252-

55, 269, 271, 321-22, 394). Most of that evidence was generated before Higdon stopped working (on April 15, 2006), and denotes temporary limitations. The ALJ's discussion shows that this evidence was considered, and the ALJ specifically recognized that plaintiff's obesity contributed to "some diminution in ordinary mobility and stamina" (R. 25). The ALJ's decision also shows that the impact of Higdon's obesity was considered "in combination with other medically-established impairments" and that the assessment was based on credible evidence reflecting the combined impact of Higdon's various ailments (R. 25-27, 29). In short, the record does not show that the ALJ's RFC assessment is marred by error.

Plaintiff also suggests that the ALJ failed to give appropriate weight to Dr. Schoedinger's May 2, 2008, medical opinion. On that date, Dr. Schoedinger noted obesity, found no response or slight response from muscle tendons, and also found decreased sensation. He found no motor weakness, pathologic reflex, or vascular insufficiency. Dr. Schoedinger encouraged plaintiff to lose weight, stop smoking, and pursue an exercise program. He recommended no other treatment but wrote that plaintiff "is considered disabled from the standpoint of gainful employment which imposes any stress upon his cervical or lumbar spine" (R. 377). While Dr. Schoedinger was a treating specialist, this was the first and only time he evaluated Higdon's medical status since April, 2006.

Defendant suggests that the ALJ was not required to evaluate Dr. Schoedinger's comment as a medical opinion because it reflects a judgment about legal disability – an issue reserved to the Commissioner – rather than an opinion about plaintiff's physical ailments. A treating physician's statement that a patient is disabled is not a medical opinion. 20 C.F.R. § 404.1527(e)(1); 416.927(e)(1). Here, the ALJ did not reject or discredit Dr. Schoedinger's comment as an opinion

on an issue reserved to the ALJ. Rather, the ALJ remarked about the absence of such evidence, writing that "[n]o doctor who has treated or examined the claimant since his alleged onset date of disability has stated or implied that he is disabled or totally incapacitated" (R. 28). Instead, the ALJ evaluated Dr. Schoedinger's comment as evidence about Higdon's physical condition:

> By January 2006, Dr. Schoedinger indicated that he could do light work, certainly work within the guidelines set out above. He never changed that recommendation really, not even after he saw the claimant again the single time in May 2008.

(R. 27-28). The ALJ noted the absence of any specific, long-term limitations, which adequately explains how he assessed Dr. Schoedinger's remark about avoiding stress upon portions of the spine. Also, the ALJ explained why an inference that Higdon was limited to sedentary work – due to Dr. Schoedinger's stress restriction – would not support a finding of disability (R. 28-29). These comments demonstrate that the ALJ considered and weighed Dr. Schoedinger's comment about the limiting effect of plaintiff's spinal impairment. The ALJ was not required to interpret the comment as controlling evidence that Higdon was incapable of performing any work activity.

Higdon also argues that the ALJ erred by failing to discuss evidence that he had a 10-pound lifting restriction at the time of the hearing (Doc. No. 27, p. 17). ALJs are not required to discuss every piece of evidence. To permit meaningful review, they must articulate – at a minimal level – their reasons for accepting or rejecting entire lines of evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994). That is, they must build a "bridge of logic" connecting the evidence to the conclusions supporting the decision. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

The ALJ specifically mentioned that a physical therapist had suggested a lifting precaution and explained why that particular piece of evidence did not support a finding of disability (R. 29). The ALJ's comments satisfy the minimal articulation standard.

### III.     ALJ Assessment of Medical Evidence

Higdon argues that the ALJ "played doctor" by failing to discuss or evaluate favorable portions of the medical record or by substituting his own lay opinion for the opinion of a longstanding treating physician.

One of the legal rules governing social security determinations is that ALJs must consider all relevant evidence and may not select and discuss only that evidence that favors an ultimate conclusion. *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)(ALJ must weigh all credible medical evidence). When a treating physician restricts a patient's activities, an ALJ may not substitute her own personal opinion about the claimant's medical condition for that of the claimant's physician. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Rather, ALJs must make disability determinations based on information in the record.

For the most part, these arguments duplicate those addressed above. The discussion shows that the ALJ considered and weighed medical records, including the functional abilities evaluation (R. 320-345), work restrictions (R.  41, 43, 62-63, 154, 171, 213-215, 230, 233, 252-55, 269, 271, 321-22, 394), Dr. Schoedinger's "stress upon the spine" restriction (R. 377), and the physical therapist's 10-pound lifting precaution (R. 380-385). Higdon's suggestion that the ALJ ignored important medical evidence is simply incorrect. That assertion does not lend support to his "played doctor" argument. Viewing the record as a whole, the Court is not persuaded that the ALJ substituted lay opinion for record evidence.

### IV.     Credibility Assessment

Higdon also challenges the rationale for the ALJ's credibility assessment. He suggests that the ALJ did not consider his description of subjective symptoms or failed to provide valid reasons

for rejecting that evidence. Defendant responds that the ALJ's credibility assessment is entitled to deference because it is supported by a commonsensical reading of the record as a whole.

Higdon testified at a hearing that he has difficulties with his lower back, knees, and breathing. He experiences constant pain which fluctuates, depending upon his motions and movements. Symptoms of pain and shortness of breath are aggravated by standing and walking for short time periods. His symptoms also include sweating, numbness in his foot, leg instability, and cramping. He rated his pain level between 6 and 8 on a ten-point scale. With walking or standing, his pain elevated to an 8 or 9, relieved by sitting and resting. He described a limited ability to perform household chores for brief periods, punctuated by rest. He could hold a gallon of milk but could not bend over and lift it. He limited himself to half-gallon containers. He said he is not able to bend, squat or stoop and needs help doing his laundry. Because sitting for extended periods causes numbness and cramps, he must adjust and readjust his body position often. He has problems getting in and out of vehicles and needs to lift his left foot to get his left leg inside a vehicle. His knees hurt with standing or walking for 5 to 10 minutes. He is able to negotiate a few stairs slowly, one step at a time. Because his symptoms frequently interrupt his sleep, he does not sleep for more than ½ hour at a time. Longer periods of sleep aggravate symptoms of shortness of breath, headaches, and sweating. He sleeps sitting up on a couch because his symptoms increase when he lies down on a bed.

Higdon said he was fired from his last job because he was expected to work eight hours and could not work four hours. He searched for another job, without success. His usual day involves reading the paper, watching television, and frequent daytime naps. He moves to different rooms and sits outside on padded lawn furniture. He tries to lose weight by sweating in the summer heat, but

is not sure that approach works. He explained that he has no income and has been borrowing money from relatives. His settlement on a worker's compensation claim was consumed by debts, rent, and purchases. He treats his breathing difficulties with a breath spray and sits in a hot tub for 15-30 minutes a day, which helps relieve knee and back pain. (R. 36-48).

Credibility determinations are afforded special deference because ALJs have a unique ability to observe witnesses and evaluate testimony. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when an ALJ bases the determination on serious errors in reasoning, remand is required. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). The determination must:

> contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reasons for that weight.

SSR 96-7p. A wide assortment of information may be considered when ALJs judge the credibility of witnesses. 20 C.F.R. §404.1529(c)(3); SSR96-7p.

The ALJ discredited Higdon's description of an inability to perform any sustained work activity "for the reasons set out in the body of the decision" (R. 30). While the decision does not set forth the rationale for this assessment with particular clarity, multiple reasons can be gleaned from a fair reading of the ALJ's discussion:

(1). Higdon's statements regarding rapid weight gain and emphysema were not well-supported by medical records.

(2). Higdon did not faithfully follow medical instructions to lose weight and stop smoking.

(3). No doctor stated or implied that Higdon was disabled or totally incapacitated..

(4). No doctor placed long term restrictions on Higdon's abilities to do basic work activities.

  (5).  Higdon did not seek regular medical attention. When his ailments were treated, conservative care was provided.

  (6).  Higdon restricted his daily activities by choice rather than by medical proscription.

Higdon challenges as unsupported the finding identified above as No. (5) – that he did not seek regular medical attention. He explains that he sought to have his chronic back pain treated since 2004, attempted to relieve and reduce his pain through physical therapy, and received treatment when he had medical insurance through a temporary program. Defendant responds that the ALJ properly noted significant gaps in treatment efforts, a "flurry" of treatment immediately preceding the hearing, and a conservative level of care.

Statements may be less credible where the level or frequency of treatment is inconsistent with the level of complaints or if the medical records show that prescribed treatment has not been followed and there are no good reasons for that failure. Such inferences should not be drawn without first considering any explanation offered. SSR 96-7p.

In March, 2006, Dr. Schoedinger released Higdon with the advice that he had reached maximum improvement and that nothing else could be done. At that time, Higdon could have obtained follow-up care at St. Anthony's Health Center but chose to see Dr. Schoedinger, who thought he could function on a permanent basis at the level of his functional capacity assessment. That document assessed Higdon's work capacity at a light physical demand level (R. 232-233, 275, 320). In late 2007 and early 2008, Higdon went to a free clinic, where he was treated by Dr. Edwards and underwent testing. Test results were provided by or interpreted by Drs. Yanta and Mahanta (R. 367-375). In February, 2008, an orthopedic consultation was suggested but not scheduled, reportedly due to lack of funds (R. 275, 375). In May, 2008, Higdon obtained access to

additional medical care through a medical card. He did not expect to have access to the doctor who was treating his knee and back problems when the card expired (R. 44-45, 47).

The ALJ considered Higdon's explanation of sporadic care but was not convinced because the evidence did not show that Higdon sought medical treatment and was refused because of an inability to pay (R. 28). This comment shows that the ALJ did explore Higdon's financial explanation and found insufficient reasons for the sporadic treatment. The administrative record indicates that some level of care was available to Higdon despite his financial circumstances, even if he was not able to purchase specialty medical services. The ALJ could rationally conclude that the record did not adequately explain the absence of primary care between April, 2006, and December, 2007. In these circumstances, the ALJ could view Higdon's medical treatment as somewhat sporadic and consider that as one factor detracting from the believability of his testimony. The ALJ relied on other information as well, which certainly elevates the assessment above the patently erroneous level. *See Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001).

Higdon also challenges the finding identified above as No. (6) – that his daily activities are restricted more so by choice than by medical proscription. He suggests that this assessment conflicts with evidence that he was under a 10-pound weight lifting restriction. Defendant points to notes indicating that Higdon tried to vacuum a pool, vacuumed two rooms and grilled for a graduation celebration.

The 10-pound weight-lifting restriction does explain why Higdon restricted some of his daily activities. Even so, the ALJ properly took note of the absence of two types of evidence: signs typically associated with chronic musculoskeletal pain and evidence showing "an inability to

ambulate effectively or to perform fine and gross movements effectively on a sustained basis . . . (R. 28). The absence of such evidence permits a reasonable inference that Higdon restricted many of his daily activities as a matter of personal choice rather than because of a medical proscription.[1]

As noted above, the ALJ's credibility assessment was also based on other factors, such as inconsistency between treatment records and Higdon's statement that he gained a great deal of weight over a relatively short period of time, inconsistency between medical treatment records and Higdon's statement that he was diagnosed with emphysema, Higdon's failure to follow oft-issued medical instructions to lose weight and stop smoking, and the absence of long-term medical restrictions on many basic work-related activities. *See* 20 C.F.R. § 404.1521(b). The ALJ's credibility assessment should not be disturbed.

### V.     Substantial Evidence

Higdon argues that his testimony is very consistent with the medical testimony in the record. He suggests that the ALJ gave too much weight to the functional capacity evaluation, which lasted less than 3 hours, and that the RFC assessment for a range of light work conflicts with the 10-pound lifting restriction mentioned in the physical therapy records. Where, as here, the records provide differing views regarding a person's physical limitations and capabilities, the ALJ had the responsibility for resolving the conflicting evidence. The substantial evidence standard does not give the Court authority to say that the physical therapy notes should have received more weight

---

[1] Defendant's suggestion that the ALJ could have relied on reports of pool-cleaning, grilling, and vacuuming lacks merit. The ALJ did not rely on that information and the Court should decline to supply additional rationale for the decision. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)(judicial review is confined to the reasons supplied by the ALJ).

than the functional capacity analysis. The ALJ was entitled to view the functional capacity analysis as a more reliable indicator of the most Higdon was able to do on a sustained basis.

## VI.     Recommendation

IT IS RECOMMENDED that the Commissioner's final decision denying Bill L. Higdon's February, 2007, applications for disability benefits and supplemental security income be AFFIRMED.

SUBMITTED:     April 22, 2010     .

                                              S/Philip M. Frazier
                                              **PHILIP M. FRAZIER**
                                              **UNITED STATES MAGISTRATE JUDGE**